IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

DANA BAKER,                         )
                                    )
       Plaintiff,                   )
                                    )
                                    )   CIV-13-1152-W
v.                                  )
                                    )
CAROLYN W. COLVIN,                  )
  Acting Commissioner of Social     )
  Security Administration,          )
                                    )
       Defendant.                   )

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(I), 423. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

Plaintiff applied for disability insurance benefits on May 5, 2011 (protective filing date), and alleged she became disabled on March 15, 2011, due to bipolar disorder, blood clots, right knee replacement, memory and comprehension problems, and bilateral carpal tunnel syndrome. (TR 138, 167). Plaintiff previously worked as a realtor and administrative

1

assistant. (TR 168). Plaintiff, Plaintiff's daughter, Plaintiff's mother, and her former co-worker submitted statements concerning Plaintiff's impairments and functional limitations. (TR 180-187, 188-195, 210-217, 227, 228, 229). Plaintiff was last insured for disability insurance benefits on March 31, 2012. (TR 163).

At Plaintiff's request, a hearing was conducted before Administrative Law Judge Shepherd ("ALJ") on January 23, 2013. (TR 31-78). At this hearing, Plaintiff and a vocational expert ("VE") testified.

The medical record shows that Plaintiff was treated from March 2006 until July 2012 by Dr. Chesler, a psychiatrist, for bipolar disorder, mainly depression of a moderate degree. (TR 262-278, 411-413, 503-512). Dr. Chesler prescribed multiple mood-stabilizing medications for Plaintiff. She reported the medications helped, and she reported in November 2011 that her depression was improved. (TR 411, 508, 509).

Plaintiff underwent right knee replacement surgery in April 2009. (TR 290). In April 2011 she returned for follow-up treatment by Dr. Tkach, her treating orthopedist. Dr. Tkach noted that Plaintiff was "doing great" and had "no pain in her knee at all." (TR 280). She exhibited full range of motion and "great stability" in her knee. (TR 280). Plaintiff reported she had "no trouble" with her knee, she could "walk as far as she wants to go" and "go up and down stairs and do all of the things she wants to do without pain." (TR 280).

Plaintiff underwent a consultative psychological evaluation conducted in July 2011 by Dr. Repanshek, Psy.D. (TR 358-361). Dr. Repanshek reported that Plaintiff exhibited some psychomotor retardation, no deficits in attention or concentration, fair insight, a

2

depressed mood, and no abnormalities of thought or indications of psychosis. (TR 358). Plaintiff described a history of mental health treatment with diagnosis of bipolar disorder in 1994 or 1995. She denied a history of psychiatric hospitalization, suicide attempts or plans or intent for suicide, and she was taking mood-stabilizing, anti-depressant, and anti-anxiety medications. She described difficulty with memory, poor motivation, hypersomnia, fatigue, increased appetite, and limited coping skills. She reported previous carpal tunnel repair surgeries and stated that her hands occasionally "will go to sleep." (TR 359).

Plaintiff underwent a consultative physical examination conducted by Dr. Lewis on July 25, 2011. (TR 365-371). She reported bipolar disorder since 1996 that had worsened over time and a history of deep venous thrombosis in 1993 and pulmonary embolism in 2009 with continued swelling in her lower extremities. (TR 369). The physician reported that on examination Plaintiff exhibited decreased range of motion in her wrists but she had no deficit in grip strength and she could manipulate small objects and effectively grasp tools. Her gait was described as "normal speed, safety and stability and no need for an assistive device." (TR 370). She was depressed and her mood affect was flat, but her speech and thought processes were appropriate, her appearance and motor behavior were appropriate, and she exhibited intact cognition, judgment, insight, and capability, according to Dr. Lewis. The diagnostic assessment was bipolar disorder, deep venous thrombosis/pulmonary embolism, hypertension, and hypothyroidism.

Plaintiff was treated in a hospital emergency room in July 2011 for chest pain, and she was discharged after testing showed no acute pulmonary disease, no evidence of pulmonary

3

embolism, and EKG testing was also normal. (TR 446-450).

Dr. Chesler completed a functional capacity questionnaire (mental) dated November 2, 2011. (TR 502). Dr. Chesler opined that due to her bipolar disorder and symptoms, Plaintiff would be absent from work more than 4 days per month and that she had marked or extreme functional limitations, including "marked" restriction of activities of daily living, "marked" difficulties in maintaining social functioning, "extreme" difficulties in maintaining concentration, persistence or pace, and "marked" episodes of decompensation within 12 month period, each of at least two weeks duration. Further, Dr. Chesler opined that Plaintiff had a Global Assessment of Functioning ("GAF") score of 50, indicating serious symptoms such as the inability to keep a job. (TR 502). See Keyes-Zachary v. Astrue, 695 F.3d 1156, 1162 n. 1 (10th Cir. 2012).

Plaintiff was treated by Dr. Morris, M.D., a psychiatrist, in September and October 2012. (TR 530-535). The diagnostic assessment was malaise and fatigue, unspecified bipolar disorder, obstructive sleep apnea, and acquired hypothyroidism. (TR 530). In these three visits to Dr. Morris, Plaintiff denied depression or suicidal thoughts. Multiple mood-stabilizing medications were prescribed. Dr. Morris completed a medical source statement concerning Plaintiff's mental functional abilities dated November 14, 2012. (TR 573-578). Dr. Morris opined that Plaintiff was either unable to meet competitive standards or seriously limited in her ability to perform many work-related activities. (TR 575-576). Dr. Morris stated that Plaintiff had no useful ability to deal with normal work stress. (TR 575).

The ALJ issued a decision on May 22, 2013 (TR 12-25), in which the ALJ found that

4

Plaintiff was not disabled within the meaning of the Social Security Act. Following the agency's well-established sequential evaluation procedure, the ALJ found at step one that Plaintiff last met the insured status requirements for disability insurance benefits on March 31, 2012, and Plaintiff did not engage in substantial gainful activity between March 15, 2011, her alleged onset date, and March 31, 2012, the date she was last insured for benefits. At step two, the ALJ found that Plaintiff had severe impairments due to deep vein thrombosis/pulmonary embolism, hypertension, status-post right knee replacement, obesity, and bipolar disorder. At the third step, the ALJ found that Plaintiff's impairments, considered singly or in combination, did not meet or medically equal the requirements of a listed impairment. At step four, the ALJ determined that through her date last insured Plaintiff had the residual functional capacity ("RFC") to perform work at the light exertional level, including the ability "to lift and carry 20 pounds occasionally and 10 pounds frequently, to sit for about 6 hours in an eight-hour workday; [and] to stand and walk for about 6 hours in an eight-hour workday." (TR 17). The ALJ placed additional physical and mental limitations on this RFC for work, as stated in the decision:

> The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant cannot climb ladders, ropes, or scaffolds. The claimant can frequently handle and finger. The claimant can understand, remember, and carry out simple, routine, and some complex tasks. She can respond appropriately to supervisors, coworkers, the general public, and usual work situations.

(TR 17). Relying on the VE's testimony at the hearing, the ALJ reached the fifth and final step of the sequential analysis and found that Plaintiff was able to perform jobs available in

5

the economy, including the jobs of data entry clerk and telemarketer. Based on these findings, the ALJ concluded that Plaintiff was not disabled and not entitled to benefits. The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

II. Standard of Review

In this case, judicial review of the final Commissioner's decision is limited to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

The agency determined that Plaintiff's insured status for the purpose of disability insurance benefits expired on March 31, 2012. Consequently, to be entitled to receive disability insurance benefits, Plaintiff must show that she was "actually disabled" within the meaning of the Social Security Act on or before March 31, 2012. Potter v. Secretary of

Health & Human Servs., 905 F.2d 1346, 1349 (10th Cir. 1990)(*per curiam*); accord, Adams v. Chater, 93 F.2d 712, 714 (10th Cir. 1996); Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 360 (10th Cir. 1993).

III. Analysis of Medical Source Statements

Plaintiff contends that the ALJ erred in giving no weight to the opinions of Plaintiff's treating psychiatrists, Dr. Chesler and Dr. Morris, concerning her mental, work-related functional limitations. Defendant Commissioner responds that the ALJ provided reasons that are well-supported by the record for discounting these physicians' opinions.

Generally, a treating physician's opinion is entitled to controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques. Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting Social Security Ruling 96-2p, 1996 WL 374188, at *2). However, "[m]edical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence." Pisciotta v. Astrue, 500 F.3d 1074, 1078 (10th Cir. 2007)(internal quotation marks omitted). When an ALJ finds that a treating physician's opinion is not entitled to controlling weight, the ALJ must decide "whether the opinion should be rejected altogether or assigned some lesser weight." Id. at 1077.

"Treating source medical opinions not entitled to controlling weight 'are still entitled to deference' and must be evaluated in light of the factors in the relevant regulations, 20 C.F.R. §§ 404.1527 and 416.927." Newbold v. Colvin, 718 F.3d. 1257, 1265 (10th Cir. 2013)(quoting Watkins, 350 F.3d at 1300).

In the ALJ's decision, the ALJ addresses the opinions provided by Dr. Chesler and

Dr. Morris. The ALJ stated that he had given "no weight" to these opinions and provided the following explanation of the finding concerning Dr. Chesler's opinion:

> Dr. Chesler's opinion is not consistent with his own findings or treatment history. Despite the doctor's opinion, there is no evidence that during the alleged period of disability, she has had an episode of decompensation of at least two weeks duration. The claimant repeatedly denied suicidal ideation, though the doctor noted she suffered from thoughts of suicide. Moreover, there is no evidence to support the doctor's opinion that the claimant has any more than mild limitation in maintaining social functioning.

(TR 22). As to Dr. Morris's opinion, the ALJ explained:

> Dr. Morris' opinion has also been given no weight. Like Dr. Chesler's opinion, it is simply not consistent with the objective medical evidence or the claimant's mental health treatment. Moreover, the doctor has a brief treatment history with the claimant of only two months (and which did not begin until approximately six months after the claimant's date last insured), and apparently relied quite heavily on the subjective reports of symptoms and limitations provided by the claimant. The doctor's own treatment notes fail to include any objective mental status examination findings to support her opinion."

(TR 22). Earlier in the decision, the ALJ described Dr. Chesler's and Dr. Morris's treatment records and relevant observations and objective findings, as well as other relevant medical evidence in the record. (TR 20-21).

With respect to both of these explanations, the ALJ considered several factors that have been recognized as relevant to the decision of the weight to give a treating physician's opinion. The ALJ's decision reflects consideration of "the degree to which the physician's opinion is supported by relevant evidence," "consistency between the opinion and the record

8

as a whole," "whether or not the physician is a specialist in the area upon which an opinion is rendered," and, with respect to Dr. Morris, "the length of the treatment relationship and the frequency of examination." See Watkins, 350 F.3d at 1301 (internal quotations omitted).

Contrary to Plaintiff's assertion, the ALJ provided a sufficiently-specific explanation of reasons for finding that the psychiatrists' medical opinions should be rejected. The explanation was not "boilerplate," as Plaintiff suggests, and the ALJ was not required to cite to specific medical evidence in the record in connection with the treating physician finding because the decision includes a thorough discussion of the medical evidence, including an accurate summary of the treatment notes of both Dr. Chesler and Dr. Morris, sufficient to allow the reviewer to follow the explanation. (TR 20).

The ALJ's decision also includes an explanation, with references to specific medical evidence in the record, of the finding that Plaintiff's mental impairments had resulted in no more than mild limitations in social functioning. (TR 16). Plaintiff's argument to the contrary has no merit. Also contrary to Plaintiff's argument, the ALJ did not err in considering the length of Plaintiff's treatment relationship with Dr. Morris or the fact that the treatment relationship did not commence until well after Plaintiff's insured status had expired. The ALJ made a common sense interpretation of Dr. Morris's opinion when the ALJ explained that the opinion should be rejected because it apparently relied heavily on Plaintiff's subjective statements. The brief treatment records from Dr. Morris contain no objective findings as to Plaintiff's mental status or even objective observations but set forth only Plaintiff's subjective statements. Further, the ALJ did not err in considering the

9

consistency between Dr. Morris's opinion and her own treatment records, and the ALJ did not err in considering the consistency between Dr. Chesler's opinion and his treatment records. Neither of the physicians' treatment records included objective findings that would support the severely-limited functional limitations set forth in the physicians' medical opinions.

Finally, there is no support at all for Plaintiff's assertion that the ALJ either "cherry-picked" or "reinterpret[ed]" medical evidence in the record to support the denial of Plaintiff's application. Plaintiff complains that the ALJ should have given more weight to the treating psychiatrists' opinions than to the opinions of the consultative examiner, Dr. Repanshek. Dr. Repanshek opined that Plaintiff had a GAF of 59, indicating moderate symptoms and functional limitations. (TR 360). The ALJ provided reasons for giving "significant weight" to Dr. Repanshek's opinion. (TR 21). Dr. Repanshek provided objective findings in the report of her consultative evaluation of Plaintiff that supported the psychologist's assessment of Plaintiff's mental functional abilities. The ALJ also found that Dr. Repanshek's GAF assessment was "consistent with the evidence of record as a whole" and provided reasons for this finding that are supported by the record. No error occurred with respect to the ALJ's evaluation of the medical evidence.

The VE testified that an individual with Plaintiff's RFC for work could perform jobs available in the economy. The VE's testimony provides substantial evidence to support the ALJ's step five determination. There is substantial evidence in the record to support the Commissioner's final decision that Plaintiff is not disabled within the meaning of the Social

10

Security Act, and the decision should therefore be affirmed.

RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's application for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before December 29th, 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this 5th day of December, 2014.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE